400 P.2d 354

Robert R. MILBURN et al., Appellants,

v.

Bernard W. BURNS, James E. Lindsay (Former Member), L. Alton Riggs (Present Member) and Ruth O'Neill, as members of and as constituting Board of Supervisors of Maricopa County, Arizona, Appellees.*

I CA–CIV 25.

Court of Appeals of Arizona.

March 29, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7580. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Lewis, Roca, Scoville, Beauchamp & Linton, by Edwin Beauchamp,* John P. Frank, Walter Cheifetz, James Moeller, Phoenix, for appellants.

Robert K. Corbin, Present County Atty., by Henry J. Florence, Deputy County Atty., Charles N. Ronan, Former County Atty., by John B. Galloway, Richard R. Brennan, Former Deputy County Attys., Phoenix, for appellees.

STEVENS, Chief Judge.

■ The Plaintiffs-Appellants at all times material to this matter were the duly appointed and acting official court reporters of the eleven Judges of the Superior Court in Maricopa County. Each judge was assigned to a numbered division of the court. The Defendants-Appellees, who are also Cross-Appellants, were the duly elected qualified and acting members of the Board of Supervisors of Maricopa County, at all times material to this cause. Since the filing of the appeal Mr. James E. Lindsay has been succeeded by Mr. L. Alton Riggs as a member of the Board. Mr. Riggs is substituted for Mr. Lindsay as mandamus operates on the office rather than the individual holding that office. City of Bisbee v. Cochise County, 50 Ariz. 360, 370, 72 P. 2d 439 (1937).

■ In the year 1960 and at all times up to and including the 1961 trial of this cause, there were eleven Judges of the Superior Court for Maricopa County, each Judge having an official court reporter. Sec. 12–221 A.R.S. Each court reporter is required to be a person skilled in the art of court reporting. Sec. 12–222 A.R.S. At the general election held on the 8th day of November 1960, the people of the State of Arizona approved the extensive revisions of Article VI of the Arizona Constitution, A.R.S. In relation to this revision, the Governor issued his proclamation on December 8, 1960. Article VI is the judicial article. The amended Article provides in part as follows:

"Section 11. There shall be in each county a presiding judge of the superior court. In each county in which there are two or more judges, the Supreme Court shall appoint one of such judges presiding judge. Presiding judges shall exercise administrative supervision over the superior court and judges thereof in their counties, and shall have such other duties as may be provided by law or by rules of the Supreme Court."

"Section 3. * * *

"The chief justice * * * shall exercise the court's administrative supervision over all the courts of the state. * * *"

On January 5, 1961 the Chief Justice of the Arizona Supreme Court designated The Honorable E. R. Thurman, one of the Superior Court Judges in Maricopa County, as the presiding judge.[1] During the latter part of the year 1960 The Honorable R. C. Stanford, Jr. was designated as the presiding judge, this designation being by his fellow judges. Both prior to and after the 1960 Constitutional Amendment the judge or judges of the Superior Court for any county had the authority to adopt local rules. Such rules were adopted by the Judges for Maricopa County. One of these rules provided for a monthly meeting of the judges,

" * * * to discuss and resolve problems of the Court, including * * * personnel * * * problems, and any

---

* It is with the deepest regret that this Court acknowledges the untimely death of Mr. Beauchamp who was an outstanding Lawyer, County Attorney and Superior Court Judge.

1. As above noted, this case was appealed to the Arizona Supreme Court and was by that Court transferred to the Court of Appeals. It is the opinion of this Court that this Court is permitted to take judicial notice of the records of the Arizona Supreme Court in relation to matters pertaining to cases which were lodged with the Arizona Supreme Court and were thereafter transferred to this Court in the same manner as the Arizona Supreme Court could have taken judicial notice of its own records.

other matters relating to the overall function of the Court." (Local Rule II(5), later Local Rule II(c).)

Clearly, at least after the presiding judge was designated by the Chief Justice pursuant to the Constitutional grant of authority, the communications from the presiding judge spoke with verity.

The record reflects that at a meeting of the judges late in the year 1960 and pursuant to the authority of A.R.S. Section 12-224 A,[2] the judges fixed the salaries of their respective court reporters in the sum of $9,600 per year effective the first Monday in January 1961. The letter of advice from the judges to the Board of Supervisors was dated December 8, 1960 and was signed by presiding Judge Stanford. It appears from the record that more than one letter of the same date was transmitted by the presiding judge, each letter being with reference to separate action taken by the judges in relation to court problems. On December 14, 1960 the Board, under the signature of the County Manager speaking for the Board, wrote to the presiding judge. The letter of December 14th related to a number of subjects including the subject of the salaries for the court reporters. In part, the letter is as follows:

"Your letters of December 8, 1960, relative to the following subjects have been received by this office. In order that there is complete understanding between the Board of Supervisors and the Judges of the Superior Court, the following are covered in detail.

\*    \*    \*    \*    \*    \*

"3. It is the Board's understanding, as a result of my telephone conversation with you, that the Court Reporters salaries which were raised by the Judges to $9,600.00 per year effective the first Monday in January 1961, will be amended to read effective July 1, 1961. Due to our very tight fiscal situation this year, the Board appreciates the Judges understanding of this problem.

"If any of the above is not in complete agreement with the Superior Court Judges, please contact this office at your earliest convenience.

"Cordially yours,
Board of Supervisors

by   Charles W. Miller
Charles W. Miller
County Manager"

There was testimony at the trial relative to fact of the conversations to which reference is made in the December 14th letter. There was testimony at the trial relative to one or possibly two informal luncheon meetings attended by at least two members of the Board of Supervisors, the County Manager and the judges, these being held after the above exchange of correspondence and prior to the 1st day of March 1961.

On March 2, 1961 presiding Judge Thurman wrote to the Board of Supervisors as follows:

"Honorable Bernard W. Burns
Chairman of Board of Supervisors
\*    \*    \*    \*    \*    \*
"Dear Mr. Burns:

"This is to advise you that the Judges of the respective divisions of the Superior Court of Maricopa County, at their monthly meeting held on March 1, 1961, unanimously adopted the following motion:

"That the salary of the duly appointed Court Reporter of the respective divisions of the Superior Court shall have an increase of salary from $7,500.00 per year to $9,600.00 per year, which said increase in salary shall be effective as of July 1, 1961.

"This increase in salary is being called to your attention at this time in order

2.  § 12–224 A. The salary of the court reporter shall be fixed by the judge of the court, with the approval of the board of supervisors of the county, and shall be paid by the county.

that you may have the opportunity of taking care of this matter in the next budget.

"Very respectfully,

/s/ E. R. Thurman
E. R. Thurman
Presiding Judge"

The next formal communication was dated June 22, 1961. This letter related to fiscal problems not only of the Superior Court but also other county fiscal problems. The letter discussed Superior Court problems in addition to the part hereinafter quoted. The letter in part is as follows:

"June 22, 1961

"To: Honorable Judge Thurman, Presiding Judge Maricopa County Superior Courts

"Honorable Judge Thurman:

"After hours of deliberation, the Board of Supervisors in trying to arrive at a balanced budget for the next fiscal year, and also with the objective in mind of adopting a budget which would be sufficient under our 10% allowable increase to permit the County to complete the fiscal year without petitioning the Tax Commissioner for an emergency grant; the Board has unanimously adopted certain policy decisions which they feel will accomplish this objective. Some of these decisions, although not easy to make because many departments in Maricopa County are not now receiving sufficient funds to provide needed services, are as follows:

\* \* \* \* \* \*

"4. The Board, because of the abnormal increase needed in this years Superior Courts budget, has approved the salaries set by the court for Court Reporters ($9,600.00 per annum) and Adult Probation Officers ($7,500.00 per annum) to become effective December 1, 1961. The Board further agrees to immediately begin a position classi-fication study of Bailiff's duties. When the study is completed a new salary schedule shall be adopted for Bailiffs. This study is scheduled for completion prior to October 1, 1961.

"5. The Board has budgeted funds for the operation of two new courts along with an additional Court Commissioner. Due to the fact that the date or dates which the new courts will begin operation is not known at the present time, these funds will be made available from our contingency fund as needed. It is anticipated that approximately $54,000.00 will be needed for this purpose prior to July 1, 1962.

\* \* \* \* \* \*

"As before stated, all of these policy decisions have been made after hours of deliberation with the objective in mind of adopting a sound operating budget for the fiscal year 1961–62. The Board does not believe in emergency appeals to the Tax Commissioner except in an *emergency*. The budgets of many departments have been cut in order that the needs of the courts can be properly met.

"The Board of Supervisors, therefore, would sincerely appreciate your co-operation and your understanding of their overall fiscal and budgetary problem which is primarily the result of State law and a burgeoning County population growth.

"Cordially yours,
Board of Supervisors
"by ―――――――――
Charles W. Miller
County Manager"

The Judges did not agree to a modification of their March action, that is they did not agree to a second deferment of the effective date of the court reporters salary increase. On July 28th the court reporters filed the law suit which is now under consideration.

On August 2, 1961 the following action was taken by the Board of Supervisors:

"COUNTY OF MARICOPA
STATE OF ARIZONA

OFFICE OF THE CLERK

"STATE OF ARIZONA ⎫
⎬ ·ss
COUNTY OF MARICOPA ⎭

"I, Rhea Averill, Clerk of the Board of Supervisors do hereby Certify That the following is a true and correct extract from the Minutes of the Board of Supervisor's Special Meeting held August 2, 1961:

"PROPOSED SALARY SCHEDULE FOR COURT REPORTERS DIS-APPROVED

"After re-consideration of the matter affecting salary increases for Court Reporters, motion was made by Mr. Burns and unanimously carried rescinding the previous action of the Board setting the salary increases to begin December 1, 1961, and that the proposed salary schedule submitted by the Superior Court be disapproved.

"The Chairman commented that if it was the desire of the Superior Courts to re-submit a salary schedule to the Board at their next regular meeting on August 7th, it would be considered at that time."

and advice with reference thereto was transmitted to the Judges under date of August 3, 1961:

"MARICOPA COUNTY OFFICE OF THE BOARD OF SUPERVISORS

Phoenix, Arizona
August 3, 1961

"The Honorable E. R. Thurman
Presiding Judge
Superior Courts of Maricopa County
Phoenix, Arizona

"Dear Judge Thurman:

"Please be advised that the Board of of Supervisors of Maricopa County has reconsidered its position in the matter affecting salary increases for Court Reporters and has rescinded the motion of the Board setting the salary increases to begin December 1, 1961, and that the proposed salary schedule submitted by the Superior Court for Court Reporters was disapproved by the Board at a special meeting held on August 2, 1961.

"If the Superior Courts of Maricopa County desire to resubmit a salary schedule to the Board at their next regular meeting on August 7th, it will be considered at that time.

"Cordially yours,
Board of Supervisors
By —————————————
B. W. Burns
Chairman"

At the trial it was established that at the time of the August 2nd action one member of the three member Board was absent. This, however, is not material in view of the provision of Sec. 11–216 A.R.S.

"§ 11–216. Chairman; quorum; public sessions

A. The supervisors shall elect a chairman, who, in addition to his other duties, shall sign all orders and warrants of the board.

B. A majority of the board constitutes a quorum for the transaction of business. * * * *"

The record discloses that one of the reasons for the August 2nd action of the Board was that by the taking of the action the position of the Board in relation to the pending litigation would be enhanced.

Thereafter the court reporters were granted leave to file and they did file an amended and supplemental complaint. Issue was joined thereon. The amended and supplemental complaint sought a declaratory judgment and if favorable a Writ of Mandamus to compel the Board of Supervisors to grant the salary increase as of the first day of July 1961.

The reasonableness of the salary fixed by the judges was admitted in the pleadings

and at the trial. The trial judge determined that the salary so fixed was reasonable.

■ In addition to the recitations contained in the June 22 letter relative to the prospective creation of new divisions of the Superior Court, there was testimony at the trial that the County budget including matters relating to the Superior Court was adopted on August 7th, that the budget so adopted was just within the statutory limitation of a 10% increase and that the budget contained a contingency fund. The County Manager testified "There has been a sum of approximately $60,000 set up in the contingency fund for additional court personnel when the new courts are placed in operation". He further testified that there was a single contingency fund for all departments in the sum of approximately $360,000, that the money set up in the contingency fund was not actually allocated stating "there would be no need for a contingency fund if it were". The total differential between a salary increase as of July 1st and a salary increase as of December 1st would be the sum of $9,625. After the case was tried briefs were submitted and in the brief of the County Attorney, which was submitted on November 3, 1961, he made reference to the fact that a new division had recently been created and the judge thereof appointed. The exact date of the creation of new divisions does not appear in the Arizona Reports, however, we find the following interesting historical data: Page vii of Volume 88 discloses eleven divisions of the Superior Court of Maricopa County, Page vii of Volume 89 discloses twelve divisions and Page vii of Volume 90 discloses thirteen divisions. Page ix of 96 Arizona discloses a current seventeen divisions. The general public, the bar and the judiciary deeply appreciate the fact that new divisions have been created to assist in disposing of a very heavy case load. However, the date of the creation of a new division rests in the discretion of the Board of Supervisors. Sec. 12–121 A.R.S. The Board of Supervisors urges that Sec. 12–224 A grants a discretion to the Board which cannot be con-

trolled by mandamus and that it necessarily follows that mandamus will not lie in relation to this case. We agree with this basic principle. It is noted that the suit is a combined action for declaratory judgment and mandamus. In the event that the declaratory judgment determined that the Board acted arbitrarily, then the element of discretion disappears, the including of the salary in the budget would become a ministerial act and mandamus would lie. In the case of Collins v. Krucker, 56 Ariz. 6, 104 P.2d 176, at page 179 (1940), the Arizona Supreme Court stated (at page 13 of the Arizona Reports)

"The general rule is that if the action of a public officer is discretionary that discretion may not be controlled by mandamus. This rule, however, is qualified by the provision that if it clearly appears that the officer has acted arbitrarily and unjustly and in the abuse of discretion, the action may still be brought. * * *"

■ The Board of Supervisors urges that in the absence of a formal written order, signed by all of the judges, or a series of separate orders signed by each of the judges, and lodged with the Clerk of the Court there is no proper action by the judges which is enforceable. Possibly a better procedure would have been to follow that course. However, with the Constitutional Amendment and the duties cast upon the presiding judge, his letter of March 2, 1961 speaks with verity. At the trial the letter was received in evidence without objection and no effort was made, in any way, to impeach or question the factual recitations contained in the letter.

■ The Board of Supervisors urges that a Board cannot act except by matters considered at a formal meeting and reflected in its minutes. Sec. 11–216 supra and Sec. 11–217 A.R.S. Even should the extensive correspondence and conferences heretofore referred to be considered as being an absence of action by the Board of Supervisors, the action of August 2nd to-

gether with the amended and supplemental complaint raises issues for judicial determination. This Court expressly refrains from passing upon the alleged informality of the earlier communications from the Board.

In addition to the finding and determination that the judges acted reasonably in fixing the salaries, the trial court determined that due to budgetary problems the Board of Supervisors acted in a reasonable manner in fixing the commencement date of the salary increase as December 1, 1961 and that the Board acted in an arbitrary and unreasonable manner in its action of August 2nd in refusing to approve any new salary. The trial judge directed the payment of the increased salary as of December 1, 1961.

This case is largely controlled by the Arizona Supreme Court case of Powers v. Isley, 66 Ariz. 94, 183 P.2d 880 (1947). Therein the Arizona Supreme Court pointed out that the authority of the Board is limited to an approval or a disapproval, that the Board could not modify or amend, and that the action of the Board must be reasonable. The trial court was in error in approving the December 1, 1961 date. It is urged that the case of Lockwood v. Board of Supervisors decided by the Arizona Supreme Court and found in 80 Ariz. 311, 297 P.2d 356 (1956) requires that this Court uphold the August 2nd action of the Board of Supervisors. We do not agree. This Court is not called upon to determine the applicable rule under other potential fact situations and we do not do so.

The judgment of the trial court is affirmed except the portion that fixes December 1, 1961 as the effective date of the salary increase. In that respect, the judgment of the trial court is reversed and this cause is remanded with instructions to amend the judgment to provide that the effective date of the increase is July 1, 1961.

CAMERON and DONOFRIO, JJ., concurring.